REDACTED

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Straights and Gays for Equality (SAGE), an unincorporated association; N. R. by her next friend and parent S. R.; and H. W., by her next friend and parent M. W., | ) ) ) ) ) |
| | Civil Action No. 05-2100 RHK/AJB |
| Plaintiffs, | ) ) ) |
| v. | ) ) COMPLAINT |
| Osseo Area Schools – District No. 279; Larry A. McGee, Member and Chairperson of the School Board of Osseo Area Schools – District 279, in his individual and official capacities; Dean G. Henke, Member and Vice Chairperson of the School Board of Osseo Area Schools – District 279, in his individual and official capacities; John L. Nelson, Member and Clerk of the School Board of Osseo Area Schools – District 279, in his individual and official capacities; Kim Green, Member and Treasurer of the School Board of Osseo Area Schools – District 279, in her individual and official capacities; Linda J. Etim, Member and Director of the School Board of Osseo Area Schools – District 279, in her individual and official capacities; Judith G. Peterzen, Member and Director of the School Board of Osseo Area Schools – District 279, in her individual and official capacities; John O'Sullivan, Jr., Superintendent of Osseo Area Schools – District 279, in his individual and official capacities; Dr. James L. Smith, former Interim Superintendent of Osseo Area Schools – District 279, in his individual capacity; Wendy Loberg, Principal of Maple Grove Senior High School, in her individual and official capacities; and Maple Grove Senior High School, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) ) |

SCANNED
SEP 12 2005
U.S. DISTRICT COURT MPLS

Plaintiffs Straights and Gays for Equality ("SAGE"); N. R., by and through her next friend and parent S. R.; and H. W., by and through her next friend and parent M.W., allege the following:

## JURISDICTION AND PRELIMINARY STATEMENT

1.    This action is based on and seeks to redress violations under the federal Equal Access Act, 20 U.S.C. §§ 4071 *et seq.*; the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 *et seq.*; the First and Fourteenth Amendments to the United States Constitution; Article I, § 2 of the Minnesota Constitution; and the Minnesota Human Rights Act, Minn. Stat. § 363A.13. Accordingly, this Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343, 2201-02, and 42 U.S.C. § 1983.  Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over the related state law claims in that they are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

2.    Plaintiffs seek a declaration that defendants' discrimination against plaintiffs and denial to them of equal access and a fair opportunity to meet, publicize their group, and engage in other expressive acts on the basis of the content of their speech are in violation of the Equal Access Act, the First Amendment to the United States Constitution, the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, the Rights and Privileges Clause of Article 1 of the Minnesota Constitution, and the Minnesota Human Rights Act; and that plaintiffs are entitled to have access to school facilities for the purpose of promoting and conducting meetings and other purposes on a basis equal to that allowed to other student clubs by defendants.  Plaintiffs further seek an injunction restraining and enjoining

2

defendants from directly or indirectly denying plaintiffs access to or use of the facilities at Maple

Grove Senior High School on a basis equal to that allowed to other student clubs by defendants.

Plaintiffs further seek an injunction restraining and enjoining defendants from indirectly

preventing plaintiffs from meeting on the premises of Maple Grove Senior High School during

noninstructional time via targeted obstructions to plaintiffs' ability to communicate and advertise

those meeting times.  Plaintiffs also seek damages, in at least a nominal amount, as well as

attorneys' fees.

## VENUE

3.     At all times relevant herein, each of the individual plaintiffs resided, and SAGE is

located, in Hennepin County, Minnesota. Defendants Osseo Area Schools – District No. 279 and

Maple Grove Senior High School ("MGSH") are headquartered in Maple Grove, Minnesota. On

information and belief, the remaining defendants also reside in Minnesota.  Further, all or

substantially all of the events that give rise to the claims in this action occurred in Hennepin

County, Minnesota.  Venue is proper in the United States District Court for the District of

Minnesota pursuant to 28 U.S.C. § 1391 in that the events and omissions giving rise to the claims

have occurred and continue to occur in Minnesota.

## PARTIES

4.     N. R. is a student at MGSH and a member of the student group Straights and Gays

for Equality ("SAGE").  She is a minor and sues here by her next friend and parent S. R.  Ms. R.

is a twelfth-grade student at MGSH.

5.     H. W. is a student at MGSH and a member of SAGE.  She is a minor and sues

here by her next friend and parent M. W. Ms. W. is a twelfth-grade student at MGSH.

6.    SAGE is an unincorporated association of students enrolled at MGSH. SAGE sues on its own behalf and on behalf of its members.

7.    Defendant Osseo Area Schools – District No. 279 ("District 279") has its principal place of business at 11200 - 93rd Avenue North, Maple Grove, MN 55369. District 279 is a school district created under Minnesota law. District 279 is also a person within the meaning of 42 U.S.C. § 1983 and was acting under color of state law at all times relevant to this complaint. District 279 controls and operates a number of schools within Hennepin County, including 19 elementary schools (kindergarten to grade 6), 4 junior high schools (grades 7 to 9), and 3 senior high schools (grades 10 to 12), one of which is MGSH, the high school where events described herein took place. District 279 is governed by an elected school board ("School Board") that appoints a superintendent ("Superintendent") to oversee the day-to-day operations of District 279. On information and belief, District 279 receives federal financial assistance.

8.    Defendant Larry A. McGee is a Member and Chairperson of the School Board. He is sued herein in his individual and official capacities.

9.    Defendant Dean G. Henke is a Member and Vice Chairperson of the School Board. He is sued herein in his individual and official capacities.

10.    Defendant John L. Nelson is a Member and Clerk of the School Board. He is sued herein in his individual and official capacities.

11.    Defendant Kim Green is a Member and Treasurer of the School Board. She is sued herein in her individual and official capacities.

12.    Defendant Linda J. Etim is a Member and Director of the School Board. She is sued herein in her individual and official capacities.

13.     Defendant Judith G. Peterzen is a Member and Director of the School Board. She is sued herein in her individual and official capacities.

14.     Defendant MGSH is a Minnesota high school with its principal place of business at 9800 Fernbrook Lane N., Maple Grove, MN 55369. MGSH, which is controlled and operated by District 279, was acting under color of state law at all times relevant to this complaint. On information and belief, MGSH receives federal financial assistance.

15.     The Superintendent is charged by the School Board with overseeing all day-to-day operations of District 279. On information and belief, the Superintendent is appointed by the School Board, which delegates to him the authority and responsibility to administer District 279. The Superintendent also serves as an *ex officio* member of the School Board. Defendant John O'Sullivan, Jr., is the current Superintendent of District 279. He is sued herein in his individual and official capacities. Defendant Dr. James L. Smith was the predecessor to John O'Sullivan, Jr., and served as Interim Superintendent of District 279. Dr. James L. Smith is sued herein in his individual capacity. At all times relevant to this complaint, the then-Superintendent of District 279 was acting under color of state law.

16.     Defendant Wendy Loberg ("Principal Loberg") is principal of MGSH. She is sued herein in her individual and official capacities. Principal Loberg was acting under color of state law at all times relevant to this complaint.

## FACTUAL ALLEGATIONS

17.     This matter arises from numerous incidents beginning at least as early as the fall of the 2003 school year and extending through the current day.

18.     A number of clubs and/or organizations are offered by and/or for students at MGSH.

MP3 20149955.1                                    5

19.    A number of these student groups are "noncurriculum related student groups" within the meaning of the Equal Access Act as interpreted by the United States Supreme Court in *Board of Education of Westside Community Schools v. Mergens*, 496 U.S. 226 (1990).   On information and belief, the subject matter of these groups is not taught nor will soon be taught in a regularly offered course; the subject matter of these groups does not concern the body of courses as a whole; participation in these groups is not required for a particular course; and participation in these groups does not result in academic credit.

20.    SAGE is a student-run and student-led group that was formed at MGSH in the 2002-2003 school year.  The purpose of SAGE is to "promote tolerance and respect for Maple Grove Senior High students and faculty through education and activities" relevant to gay, lesbian, bisexual and transgender ("GLBT") individuals and their allies.

21.    It is the policy and practice of MGSH and District 279 that certain favored noncurricular student groups ("Favored Groups") are permitted to meet and advertise their activities on school premises via the school's public address system ("PA system"), informational tables, publicly displayed posters, informational flyers and leaflets, and scrolling video announcements, as well as via exposure at school-sponsored events.

22.    It is also the policy and practice of MGSH and District 279 that SAGE and its members are not granted equal access to these same school facilities and resources.

### 2004-2005 SCHOOL YEAR

23.    Throughout the 2004-05 school year, plaintiff SAGE and its members, including plaintiffs N. R. and H. W., were consistently denied access to school facilities under the same terms offered to the Favored Groups.  SAGE members were systematically and repeatedly denied permission to post SAGE posters, announce SAGE meetings on the school's PA system,

distribute flyers or informational cards, and provide information concerning their group at informational tables.

24.    In contrast, other noncurricular groups, including, by way of example only and not limitation, the Spirit Council, the National Honor Society, the Asian Culture Group, the African American Group, the Chess Club, and SADD (Students Against Destructive Decisions) were afforded access to some or all of these means of publicizing their clubs and activities.

25.    For example, certain Favored Groups, including the Spirit Council, Asian Culture Group, African American Group, Students Against Destructive Decisions ("SADD"), and National Honor Society, were afforded access to the school's PA system to make announcements regarding their meeting times and locations and other upcoming events.

26.    Defendants specifically denied plaintiffs access to the school's PA system to publicize SAGE's meeting times and events.

27.    As another example, certain Favored Groups, including the International Club, Recognition Committee, National Honor Society, African American Group, and Asian Culture Group, were afforded access to the school's video announcement system for the purpose of publicizing their meeting times and locations and other upcoming events.

28.    Defendants specifically denied plaintiffs access to the school's video announcement system to publicize SAGE's meeting times and events.

29.    As a third example, certain Favored Groups including SADD were afforded access to one or more public spaces in the school for handing out leaflets and flyers for the purpose of publicizing their meeting times and locations and other upcoming events.

30.    Defendants specifically denied one or more requests by plaintiffs to distribute informational materials, such as information flyers or leaflets, to the student body.

31.     As a fourth example, certain Favored Groups, including the Chess Club, National Honor Society, Salon, SADD, and The Overtones, were afforded access to wall space in hallways and classrooms for the purpose of publicizing their meeting times and locations and other upcoming events.

32.     Defendants specifically denied SAGE access to wall space to publicize its meeting times and events, other than in one glass-enclosed bulletin board.

33.     On information and belief, the other student groups limited to the use of this glass-enclosed box include young Republican, young Democrat, and Bible study groups.

34.     Plaintiffs asked Principal Loberg on several occasions to explain specific incidents of the differential treatment described above.

35.     On one occasion, Principal Loberg had authorized two Favored Groups – the Chess Club and Salon – to place posters outside of a room where they were to hold meetings. This authorization came in the form of Principal Loberg's signature appearing on the posters.

36.     When plaintiffs requested that Principal Loberg approve posters of the same size as those approved for Chess Club and Salon and for the same purpose – publicizing group meetings – she refused.

37.     Principal Loberg also stated that she did not remember having signed posters for the Chess Club and Salon. She added that "the Chess Club might become curricular" in the future because a Chess Club tournament occasionally might be held during class time.

38.     Principal Loberg's statement represents an acknowledgement that the Chess Club, among other groups, has in the past been considered to be a noncurriculum related student group.

39.    On a second occasion, plaintiffs requested access to a table located in a public area in order to distribute cards and otherwise publicize both SAGE and an annual event called the Day of Silence.[1]  Plaintiffs made this request far in advance of the event.

40.    In response, Principal Loberg said that "leafleting" was prohibited at MGSH and that the requested table was reserved for "educational" purposes.

41.    However, several Favored Groups, including SADD, have distributed cards publicizing their groups, and the requested table is regularly used by Favored Groups in order to publicize their meetings and events.

42.    Principal Loberg also indicated that, for purposes of publicizing the Day of Silence, SAGE would be afforded access to a table separate from those used by Favored Groups.

43.    Defendants then revoked this grant of access several days before SAGE would have used this separate table.

44.    Finally, Principal Loberg granted plaintiffs permission to distribute flyers relating to the organization, but on one day only (the Day of Silence), and only to students who first expressed "an interest" in SAGE.

45.    Since participants in the Day of Silence commit not to speak for the entire day, it is virtually impossible for SAGE members actually to question, and thus ascertain, whether students have "an interest" in the Day of Silence.

46.    On a third occasion, plaintiffs again inquired about specific incidents of the differential treatment described above.  This time, plaintiffs' inquiries centered on the extensive access to means of publicity which was afforded to SADD by MGSH in March 2005.  These

---

[1] The Day of Silence is a day observed nationally during which supporters of the GLBT community remain silent in order to protest the forced silence of the gay community.

means included announcements over the PA system and the placement of numerous posters throughout the school.

47.    Plaintiffs asked Principal Loberg to grant SAGE access to the same means of publicity as those afforded to SADD, a student group that advocates against a number of "destructive decisions," including the use of illegal drugs. Principal Loberg refused, explaining that attorneys for MGSH had expressed the view that SADD is a "curricular" group. In light of the "substance abuse problem" at MGSH, she said, defendants took the position that SADD has a "health class undertone."

48.    The subject matter of SADD is not taught nor will soon be taught in a regularly offered course;  the subject matter of SADD does not concern the body of courses as a whole; participation in SADD is not required for a particular course; and participation in SADD does not result in academic credit.

## 2005-2006 SCHOOL YEAR

49.    District 279 has adopted a new "Student Group Framework" for the 2005-2006 school year. Pursuant to the Student Group Framework, a copy of which is attached as Exhibit A, certain groups are labeled "curricular" and certain groups are labeled "non-curricular."

50.    A list of the student groups labeled "curricular" and "non-curricular," respectively, by District 279 and MGSH is attached as Exhibit B.

51.    Pursuant to the Student Group Framework, the groups labeled "curricular" on Exhibit B are permitted by Defendants to "communicate via PA [public address system], Yearbook, [or] scrolling video screen or use other avenues of communication."

52.     Pursuant to the Student Group Framework, the groups labeled "non-curricular" on Exhibit B "may not announce on PA, in yearbook, scrolling screen, or other avenues of communication" (emphasis in original), but may communicate only through selected posters.

53.     On information and belief, a number of groups labeled "curricular" by Defendants are "noncurriculum related student groups" within the meaning of the Equal Access Act. On information and belief, the subject matter of these groups is not taught nor will soon be taught in a regularly offered course; the subject matter of these groups does not concern the body of courses as a whole; participation in these groups is not required for a particular course; and participation in these groups does not result in academic credit.

54.     The Student Group Framework and list of student groups on Exhibit B indicate that Defendants intend to continue to violate Plaintiffs' rights during the 2005-2006 school year.

## EFFECT OF DEFENDANTS' CONDUCT

55.     The discrimination against and disparate treatment of SAGE has contributed to the marginalization of, and disrespect for, SAGE, its members, and the gay/lesbian/bisexual and transgender community at the school.

56.     For example, sexual orientation-related slurs, such as the word "fag," are regularly made by students in the halls and in class during instructional time. While school officials occasionally have reprimanded students for use of this language, there remains a decided pattern of ignoring it.

57.     As another example, during the 2004-05 school year, students in a MGSH social studies class created a "storytelling project" where they acted out a skit about an Asian nation. As part of their class project, a group of male students made another male student say he was gay. These male students then proceeded to make suggestive and offensive comments about

"taking the enemy from behind." On information and belief, neither the teacher nor the school intervened in this incident or otherwise indicated to the students involved that such behavior was either offensive or inappropriate.

58.    In another incident, senior ALP students (a class for advanced students that combines English and Social Studies) were required to complete certain projects concerning the civil rights movements. One group chose as its topic the gay rights movement. Later the parent or parents of one of the students involved in that project contacted the ALP teacher and indicated opposition to having their daughter participating in the gay rights project. In response, the teacher forced the entire group, which contained at least one gay student, to abandon the project on the gay rights movement and choose a different topic instead.

59.    By treating SAGE as a second-class club that is unacceptable to be seen on posters in the school lobby or heard on the PA system, defendants convey the message that these students and the GLBT community do not deserve the same respect to which other students are entitled.

60.    Moreover, SAGE was formed to foster a culture of understanding (not unlike the culture of understanding sought by student groups for African-American and Asian students) and an educational atmosphere where GLBT students feel safe and treated with respect rather than ridicule and hostility.

61.    Defendants' discrimination against and disparate treatment of SAGE, as well as defendants' tacit acceptance of verbal slurs and other derogatory acts that marginalize and foster disrespect for the GLBT community and its supporters, have helped create and maintain an environment that is hostile to SAGE, to its members, to plaintiffs N. R. and H. W., and to the GLBT community and its supporters.

62.    Moreover, over a period of time, and as a direct result of plaintiffs' inability to publicize effectively the existence of SAGE and its mission, SAGE has seen its membership decline as students graduate from MGSH, and SAGE is prevented from effectively reaching out to new members, students and faculty who might participate in SAGE if they were made aware of it or who are in need of SAGE's support. The inability of SAGE to publicize its meetings in the same manner as other similarly situated student groups has had the effect of preventing some interested students from participating in the group's meetings at all.

63.    By denying SAGE the visibility available to other clubs, defendants are keeping the organization effectively in the closet and stifling an important means of achieving a welcoming environment for all students.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
Violation of 42 U.S.C. § 1983
Through Violation of Equal Access Act, 20 U.S.C. §§ 4071-4074

64.    Plaintiffs repeat and reallege the allegations of paragraphs 1 through 63 above, and incorporate those allegations herein by this reference.

65.    The Equal Access Act, 20 U.S.C. §§ 4071 *et seq.*, bars any public secondary school that receives federal funds and offers a "limited open forum" from denying access to that forum equally to any student on the basis of the content of the student's speech. § 4071(a).

66.    A school has a limited open forum whenever it grants an opportunity for any noncurriculum related student group to meet on school premises during noninstructional time. 20 U.S.C. § 4071(b).

67.    Defendants, acting under color of state law and in violation of 42 U.S.C. § 1983, have deprived plaintiffs of the rights, privileges, or immunities secured by the Equal Access Act, 20 U.S.C. §§ 4071 *et seq.*, in that:

a.    Maple Grove Senior High School is a public secondary school that receives federal financial assistance;

b.    Maple Grove Senior High School has a limited open forum in that it grants an offering to or opportunity for one or more noncurriculum-related student groups to meet on school premises during noninstructional time;

c.    Defendants have discriminated against plaintiffs, denied equal access to plaintiffs, and refused to offer plaintiffs a fair opportunity to conduct meetings within Maple Grove Senior High School's limited open forum on the basis of the religious, political, philosophical, or other content of the speech at such meetings.

68.    As an actual and proximate result of defendants' conduct, plaintiffs have been injured and suffered damages in at least a nominal amount.

### SECOND CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
Violation of 42 U.S.C. § 1983 Through Violation of the Rights of
Expression and Association Protected by First Amendment and the Due Process Clause of
the Fourteenth Amendment

69.    Plaintiffs repeat and reallege the allegations of paragraphs 1 through 68 above, and incorporate those allegations herein by this reference.

70.    Defendants, acting under color of state law and in violation of 42 U.S.C. § 1983, have deprived plaintiffs of the rights, privileges, or immunities secured by the First Amendment of the United States Constitution, made applicable to the States through the Due Process Clause of the Fourteenth Amendment, in that:

a.     Plaintiffs' expression and association activities are constitutionally protected under the First Amendment, made applicable to the States through the Due Process Clause of the Fourteenth Amendment;

b.     Maple Grove Senior High School has a limited public forum for student groups to meet on school premises and to use school facilities for communicating about those groups' activities;

c.     Defendants have deprived plaintiffs of their right to engage in constitutionally protected expression and association activities by preventing plaintiffs from using certain school resources and facilities and by obstructing SAGE meetings through prohibitions on advertising and other communications regarding SAGE;

d.     Defendants have deprived plaintiffs of their right to engage in constitutionally protected expression by preventing plaintiffs from distributing literature on school grounds; and

e.     Defendants improperly have treated plaintiffs differently from the manner in which other student groups have been treated on the basis of the content of the speech of SAGE and its members.

71.     As an actual and proximate result of defendants' conduct, plaintiffs have been injured and suffered damages in at least a nominal amount.

### THIRD CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
Violation of 42 U.S.C. § 1983 Through Violation of the Equal
Protection Clause of the Fourteenth Amendment

72.     Plaintiffs repeat and reallege the allegations of paragraphs 1 through 71 above, and incorporate those allegations herein by this reference.

73.     Defendants, acting under color of state law and in violation of 42 U.S.C. § 1983, have deprived plaintiffs of the rights and privileges secured by the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, in that defendants, without justification, have treated plaintiffs differently than defendants have treated other similarly situated student groups and students at Maple Grove Senior High School on the basis of the actual or perceived sexual orientation of plaintiffs and those with whom they associate, as well as plaintiffs' political views and expression, by subjecting plaintiffs to less favorable standards and levels of access to school facilities and by preventing SAGE from advertising its meetings on campus.

74.     As an actual and proximate result of defendants' conduct, plaintiffs have been injured and suffered damages in at least a nominal amount.

### FOURTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
Violation of the Equal Protection Clause of
Article I, § 2 of the Minnesota Constitution

75.     Plaintiffs repeat and reallege the allegations of paragraphs 1 through 74 above, and incorporate those allegations herein by this reference.

76.     Defendants, acting under color of state law, have deprived plaintiffs of the rights and privileges secured by the Equal Protection Clause of Article I § 2 of the Minnesota Constitution in that defendants, without justification, have treated plaintiffs differently than defendants have treated other similarly situated student groups and students at Maple Grove Senior High School on the basis of the actual or perceived sexual orientation of plaintiffs and those with whom they associate, as well as plaintiffs' political views and expression, by subjecting plaintiffs to less favorable standards and levels of access to school facilities and by preventing SAGE from advertising its meetings on campus.

77. As an actual and proximate result of defendants' conduct, plaintiffs have been injured and suffered damages in at least a nominal amount.

**FIFTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS**
Violation of Minnesota Human Rights Act, Minn. Stat. § 363A.13 *et seq.*

78. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 77 above, and incorporate those allegations herein by this reference.

79. Defendants, acting under color of state law, are in violation of the Minnesota Human Rights Act, Minn. Stat. § 363A.13 *et seq.* in that defendants have discriminated against plaintiffs by denying them the full utilization of and benefit from the facilities and services of Maple Grove Senior High School made available to other persons similarly situated because of the actual or perceived sexual orientation of plaintiffs.

80. As an actual and proximate result of defendants' conduct, plaintiffs have been injured and suffered damages in at least a nominal amount.

**SIXTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS**
For a Declaration Pursuant to 28 U.S.C. §§ 2201-2202 that
Defendants' Conduct is in Violation of the Equal Access Act, the
Civil Rights Act of 1871, the First and Fourteenth Amendments to the United States
Constitution, Article I, § 2 of the Minnesota Constitution, and the Minnesota Human Rights Act,
and that Plaintiffs are Entitled to Have Access to School Facilities on the Same Basis as
Other Noncurricular Student Groups

81. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 80 above, and incorporate those allegations herein by this reference.

82. An actual controversy within this Court's jurisdiction exists between plaintiffs and defendants, in that:

a. Plaintiffs contend that SAGE and its members are entitled to not be discriminated against and to be provided equal access and a fair opportunity to meet on school premises during noninstructional time under the Equal Access Act, the First

Amendment and the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, Article I, § 2 of the Minnesota Constitution, and the Minnesota Human Rights Act, Minn. Stat. § 363A.13 *et seq.*;

      b.     Plaintiffs contend that defendants have discriminated against plaintiffs and denied them equal access and a fair opportunity to meet on Maple Grove Senior High School premises during noninstructional time on the basis of the content of the SAGE's speech and the speech of its members; and

      c.     Defendants deny these contentions.

83.    A judicial declaration among the parties is necessary and appropriate at this time in order that they promptly may ascertain and enforce their respective rights and obligations.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiffs pray for relief against defendants as follows:

84.    For a declaration of the rights, obligations, and other legal relations among plaintiffs and defendants Osseo Area Schools - District No. 279; Larry A. McGee; Dean G. Henke; John L. Nelson; Kim Green; Linda J. Etim; Judith G. Peterzen; Maple Grove Senior High School; John O'Sullivan, Jr.; Dr. James L. Smith; and Wendy Loberg, namely that defendants' discrimination against plaintiffs and denial of equal access and a fair opportunity to meet on Maple Grove Senior High School premises during noninstructional time on the basis of the content of the SAGE's speech violate the Equal Access Act, The First Amendment and the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, and the Minnesota Human Rights Act, and that plaintiffs are entitled to have access to and use of all school facilities on a basis equal to other noncurricular student groups.

85.    For a preliminary and permanent injunction restraining and enjoining defendants and their directors, officers, agents, affiliates, subsidiaries, servants, employees, and all other persons or entities in active concert or privity or participation with them, from directly or indirectly preventing the plaintiffs from meeting on the premises of Maple Grove Senior High School during noninstructional time, and from directly or indirectly denying plaintiffs access to or use of school facilities on a basis equal to other noncurriculum related student groups.

86.    For damages, in at least a nominal amount.

87.    For interest, where appropriate, on damages awarded.

88.    For costs and attorneys' fees incurred in the prosecution of this action pursuant to, without limitation, 28 U.S.C. § 1988 and Minn. Stat. §§ 363A.29 and 363A.33, subd. 7.

Respectfully submitted,

Dated: September *8*, 2005

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

By Thomas C. Kayser

Thomas C. Kayser (#5415X)
David P. Pinto (#0312770)
Michael D. Okerlund (#0321709)
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402
Telephone: (612) 349-8500
Facsimile: (612) 339-4181

Teresa J. Nelson (#269736)
AMERICAN CIVIL LIBERTIES UNION OF
MINNESOTA
450 N. Syndicate St.
Suite 230
St. Paul, MN 55104
Telephone: 651-645-4097 ext. 122
Facsimile: 651-647-5948