**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| Straights and Gays for Equality (SAGE), N.R. by her next friend and parent S.R., and H.W. by her next friend and parent, M.W., | Civil File No. 05-2100 (JNE/FLN) |
| Plaintiffs, | |
| v. | |
| Osseo Area Schools – District No. 279; Larry A. McGee, Member and Chairperson of the School Board of Osseo Area Schools, in his individual and official capacities; Dean G. Henke, Member and Vice Chairperson of the School Board of Osseo Area Schools, in his individual and official capacities; John L. Nelson, Member and Clerk of the School Board of Osseo Area Schools, in his individual and official capacities; Kim Green, Member and Treasurer of the School Board of Osseo Area Schools, in her individual and official capacities; Linda J. Etim, Member and Director of the School Board of Osseo Area Schools, in her individual and official capacities; Judith G. Peterzen, Member and Director of the School Board of Osseo Area Schools, in her individual and official capacities; John O'Sullivan, Jr., Superintendent of Osseo Area Schools - District No. 279; in his individual and official capacities; Dr. James L. Smith, for Interim Superintendent of Osseo Area Schools - District 279, in his individual capacity; and Wendy Loberg, in her individual and official capacities as Principal of the Maple Grove Senior High School, and Maple Grove Senior High School, | **MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION** |
| Defendants. | |

## FACTUAL BACKGROUND

In their Complaint dated September 8, 2005, Plaintiffs Straights and Gays for Equality

(hereinafter "SAGE") and minor Plaintiffs N.R. and H.W., by their parents, have brought

suit against Defendants, Independent School District No. 279, Larry A. McGee, Dean G. Henke,

John L. Nelson, Kim Green, Linda J. Etim, Judith G. Peterzen, John O'Sullivan, Jr., Dr. James L. Smith and Wendy Loberg, (hereinafter the "School District Defendants"), who incorporate by reference and refer this Court to their factual background section of the School District Defendants' Motion for Summary Judgment.  In addition, the School District Defendants submit to the Court the following additional factual background.

Attached hereto as Exhibit 1 is a copy of a letter dated December 8, 2003 from Plaintiffs' co-counsel, Teresa Nelson, to Principal Conn McCartan of Maple Grove Senior High School (hereinafter "MGSH").  In her letter, Ms. Nelson notes that her employer, the Minnesota Civil Liberties Union, had been contacted by members of Plaintiff SAGE regarding problems that the group has encountered accessing in-school media and other facilities at Maple Grove High School.  Ms. Nelson commented:

> It is our understanding that SAGE has been restricted to the use of one bulletin board, has been denied the use of the public address system, and has been denied the ability to staff information tables during lunch periods. It is our further understanding that at least one other student organization, the National Honor Society, has unencumbered access to these opportunities for publicity. This unequal treatment is a violation of federal law.

Ms. Nelson made specific reference to the Equal Access Act, (hereinafter the "E.A.A."), asserting that MGSH had violated the E.A.A. by impeding SAGE in "its ability to promote itself to students, and to attract new members to assure its viability in future school years." Ms. Nelson claimed that the School District violated the E.A.A. by not granting SAGE the same dissemination rights of MGSH's National Honor Society (hereinafter "NHS"), which Ms. Nelson asserted was actually a noncurriculum-related group.

Enclosed herewith as Exhibit 2 is a copy of a February 5, 2004 letter from Attorney Stephen Knutson to Plaintiffs' co-counsel, Teresa Nelson, responding to her December 8, 2003 letter.  Mr. Knutson denied that the NHS was a noncurricular group for purposes of the E.A.A.  Mr. Knutson further noted that MGSH provided all noncurriculum-related groups, including SAGE, with access to facilities for meetings before and after school and access to the MGSH community bulletin board.

Attached as Exhibit 3 is a copy of a September 16, 2004 letter from Plaintiffs' attorney, Michael Okerlund, to School District counsel, Stephen Knutson.  Mr. Okerlund noted that his law firm had been in contact with SAGE "concerning its legal concerns". Plaintiffs' counsel made reference to SAGE's "faculty advisor" Donna Speake, and asked that Mr. Knutson "carefully define Ms. Speake's administrative and/or advisory role to enable both parties to identify and eliminate potential conflicts."

Attached hereto as Exhibit 4 is a copy of an October 7, 2004 letter from School District counsel, Stephen Knutson, to Plaintiffs' attorneys, Thomas Kayser and Michael Okerlund, advising them of the School District's position to the effect that Donna Speake was a School District employee and should not be interviewed by Plaintiffs' counsel unless a School District attorney was present.

Attached hereto as Exhibit 5 are copies of a July 15, 2005 letter from Plaintiffs' attorney, Thomas Kayser, to School District counsel, Stephen Knutson, and Plaintiffs' proposed Complaint.  In his July 15, 2005 letter, Mr. Kayser indicated that he anticipated

serving and filing the Summons and Complaint as quickly as possible in the event that settlement could not be reached.

Attached hereto as Exhibit 6 is a copy of an August 17, 2005 letter from School District counsel, Stephen Knutson, to Plaintiffs' attorney, Mr. Kayser, wherein he provided Mr. Kayser with a list of the current student groups for the 2005-2006 school year, with a designation as to whether they were curriculum-related or noncurriculum-related.  Attached hereto as Exhibit 7 is the Affidavit of Lawrence J. Hayes, Jr.

## ARGUMENT

### I.   Standard for granting injunctive relief.

Plaintiffs' request for injunctive relief must be denied because Plaintiffs have not established either a legal or a factual justification for this extraordinary remedy.  According to the Eighth Circuit Court of Appeals, in deciding a motion for a preliminary injunction, a district court must balance four factors:

1.   The likelihood of success on the merits;

2.   The threat of irreparable harm to the movant in the absence of relief;

3.   The balance between that harm and the harm that the relief would cause to other litigants; and

4.   Whether the public interest favors granting the Motion.

*Watkins, Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003) (*citing Dataphase Systems, Inc. v. CL Systems, Inc.,* 640 F.2d 109, 114 (8th Cir. 1981).

The party seeking injunctive relief bears the burden of proving all the *Dataphase* factors. *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987). The Eighth Circuit Court of Appeals, in the case entitled *Sanborn Mfg. v. Campbell Hausefeld/Scott Fetzer Co.*, 997 F.2d 484, 486 (8th Cir. 1993), noted that with regard to a preliminary injunction, the burden on the movant is heavy, in particular where granting the preliminary injunction will give the movant substantially the relief it would obtain after a trial on the merits.

The granting of preliminary injunctions is not favored unless the right to relief is clearly established. *Ferry-Morse Seed Co. v. Food Corn, Inc.*, 729 F.2d 589, 503 (8th Cir. 1984). The Eighth Circuit, in the case entitled *Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1982), noted that an injunction must be tailored to remedy specific harms shown and commented that the court must determine that a cognizable danger of future violation exists, and that said danger must be more than a mere possibility. The *Scurr* court cited approvingly from the case of *Holiday Inns of America, Inc. v. B & B Corporation*, 409 F.2d 614, 618 (3rd Cir. 1969) as follows: "The dramatic and drastic power of injunctive force may be unleashed only against conditions generating a presently existing actual threat; it may not be used simply to eliminate a possibility of a remote future injury, or a future invasion of rights, be those rights protected by statute or by the common law."

II.    **The Plaintiffs' claim fails both factually and legally, and thus, they are unlikely to succeed.**

The common touchstone for any motion seeking preliminary injunctive relief is to first ascertain whether the moving party is likely to succeed on the merits of the claims asserted. As the moving parties in this case, Plaintiffs carry the heavy burden of proving that they are likely to prevail.   To warrant preliminary injunctive relief, the moving party must demonstrate a sufficient threat of irreparable harm. *Bandag, Inc. v. Jack's Tire & Oil, Inc.*, 190 F.3d 924, 926 (8th Cir. 1999).  If the moving party cannot carry its burden with respect to success on the merits, the court cannot infer that the movant would suffer irreparable harm. *Lexis-Nexis v. Beer*, 41 F.Supp.2d 950, 959 (D. Minn. 1999).

Plaintiffs' Complaint alleges three federal claims and three state court-related claims. As addressed in Defendants' Motion for Summary Judgment dated January 13, 2006, none of these claims have merit.  The School District Defendants incorporate by reference and adopt the arguments outlined in their Motion for Summary Judgment in support of their claim that Plaintiffs have failed to demonstrate a likelihood of success on the merits.

Plaintiffs have asserted that SAGE has been discriminated against based on the content of its speech in violation of their E.A.A. and other federal constitutional rights.  This argument ignores the fact that MGSH has created and supported as a curriculum-related group the GLBTQ-A group, which has full rights of access to school facilities and dissemination of materials.  Obviously, if the School District Defendants intended to discriminate against Plaintiffs based upon their sexual orientation as claimed, they would not

have proactively established the GLBTQ-A group.  None of the federal court decisions cited

by Plaintiffs, including the *Mergens* case, have an underlying factual setting wherein a school

district defendant has established and fostered a gay student's support group, such as

GLBTQ-A.

Attached as Exhibit 11 to Defendants' Motion for Summary Judgment is an

unpublished decision entitled *Palmer High School Gay/Straight Alliance v. Colorado Springs*

*Sch. Dist. No. 11,* (D. Colo. 2005).  In that case, plaintiffs Palmer High School Gay/Straight

Alliance (hereinafter "GSA") and others filed a complaint alleging violation of the Federal

Civil Rights Act through violation of the E.A.A., as well as plaintiffs' federal constitutional

rights to freedom of speech and association and equal protection under the Fourteenth

Amendment.  A preliminary injunction was brought by the plaintiffs requiring defendant

school district to extend official status to GSA pending determination of the action.  The

*Palmer* court rejected plaintiffs' assertion that the E.A.A. should be strictly construed against

the school district, commenting at page 4 as follows:

> Justice O'Connor's language in *Mergens* should not be applied so literally as
> to require a one-for-one comparison of the activities of each student group
> with a specific course that is regularly offered.  She included a reference to the
> body of courses as a whole in defining what constitutes a curriculum-related
> student group.  That does not exclude the use of a combination of courses.

The court denied plaintiffs' motion for a preliminary injunction, stating: "At this preliminary

stage of this litigation, deference is due to the defendant's classification of school sponsored

groups.  The classification appears to have been made with deliberation and is not arbitrary

or capricious."   The same can be said of the School District Defendants' classification of curriculum-related versus noncurriculum-related groups in this case.

### III.   Plaintiffs have failed to demonstrate irreparable injury.

In order to succeed in this action, Plaintiffs must further demonstrate irreparable injury.  "The threshold inquiry is whether the movant has shown the threat of irreparable injury" and a determination that no irreparable harm has been demonstrated will end the matter. *Glenwood Bridge, Inc. v. City of Minneapolis,* 940 F.2d 367, 371 (8th Cir. 1991).  As stated above, the School District Defendants have at all times attempted to comply with the E.A.A.  In contrast to Plaintiffs' prayer for relief, this does not mean that the School District Defendants are required to afford SAGE with additional access rights, which mistakenly were provided to several groups which were wrongly categorized as curricular.

In complying with the E.A.A., the School District Defendants have the right to determine beyond the mere provision of a meeting space, any additional access rights to be afforded to noncurriculum student groups.  Should the Court find that the School District wrongly categorized any student group as curriculum-related, the School District Defendants have the right and will change its recognition of that group as noncurriculum-related and provide such group only with those rights of access available to other noncurriculum-related groups.  The School District Defendants are under no obligation to further open the limited forum it presently provides to noncurricular student organizations.  Therefore, as long as the School District is in compliance with the E.A.A., there is no threat of future irreparable harm, which renders injunctive relief unnecessary.

8

In support of their claim for irreparable harm, Plaintiffs state at page 9 of their Memorandum in Support of their Motion for a Preliminary Injunction that the noncurriculum student limitations imposed on SAGE have "greatly impaired" it from accomplishing its goals.   At page 21 of their Memorandum, Plaintiffs assert that the School District Defendants' denial of equal access rights to SAGE has "severely hampered their ability to reach out to new members and perpetuate the group."  Plaintiffs further argue at page 21 of their Memorandum that it is "likely" that SAGE's treatment as a second class organization "has resulted in gradual decline in SAGE's active membership base."  Plaintiffs further claim that if "left unchecked, this decline may in fact cause the eventual demise of SAGE . . ."

As a factual basis for these assertions, Plaintiffs have cited the deposition testimony of Wendy Loberg, who testified that she was aware of occasional student verbal harassment, which was handled under the MGSH's disciplinary format.  Ms. Loberg was not aware of any assaultive behavior relating to sexual orientation.  Plaintiffs have submitted an Affidavit on behalf of minor Plaintiff N.R. in support of their Motion for a Preliminary Injunction.  At paragraph 6 of said Affidavit, the minor Plaintiff N.R. states in conclusory fashion that the limits placed on SAGE by the school have "greatly hampered SAGE's ability to accomplish its educational and supportive goals."  Paragraph 7 of N.R.'s Affidavit states that:  "SAGE meetings are one of the few opportunities available where students can safely discuss GLBT issues in a supportive and nonjudgmental atmosphere."   This appears to be an acknowledgment by Plaintiffs that there is an officially-sanctioned curriculum-related group,

GLBTQ-A, which possesses full dissemination and access rights and where GLBT issues are in fact discussed on a daily basis in a supportive and nonjudgmental atmosphere.

Paragraph 10 of the Affidavit of minor Plaintiff N.R. states that both minor Plaintiffs have sought to perpetuate SAGE's mission at MGSH "by reaching out to new SAGE members to replace graduating senior members such as ourselves." In Paragraph 11 of her Affidavit, minor Plaintiff N.R. speculates that the MGSH's treatment of SAGE fosters notions of unworthiness, which "have, over time, resulted in a gradual decline in SAGE's active membership base." Taking minor Plaintiff N.R.'s Affidavit at face value, Plaintiff SAGE at most is suffering a "gradual" decline in membership, which does not support Plaintiffs' argument that "the demise of SAGE" is a realistic possibility in the future.

Plaintiffs have offered, as Exhibit D to their Memorandum, an e-mail dated October 5, 2005 from former student, Jeffrey Opdyke, to Plaintiffs' attorney, Thomas Kayser. In his e-mail, Mr. Opdyke indicates that while a 10th grader at MGSH during the 1997-1998 school year, he was "chased, and pushed down all three flights of stairs, kicked, punched, trampled and abused" on the final day of school. This exhibit should not be considered by the Court because it is not a sworn affidavit, as required by the Federal Rules of Civil Procedure. Even if the affidavit be accepted as appropriate evidence by this Court, an isolated assault on the final day of school more than seven years ago does not come even close to establishing either a basis for irreparable harm or demonstration that a climate of harassment based on sexual orientation currently exists at MGSH.

10

Plaintiffs' claim of irreparable harm is also undermined by the fact that Plaintiffs sat on their hands for almost two years between Plaintiffs' counsel, Ms. Nelson's, December 8, 2003 letter to MGSH alerting it of alleged violations of the E.A.A. and their filing of a Complaint in Federal District Court in September, 2005.   Plaintiffs assert in their Memorandum that they are entitled to immediate injunctive relief because minor Plaintiffs, N.R. and H.W., will graduate in June 2006.  However, Plaintiffs chose to delay filing of their Complaint during a significant time frame where members of SAGE graduated from MGSH at the conclusion of the 2003-2004 and 2004-2005 school years without relief from the alleged discriminatory conduct of the School District Defendants.   Based on this prior conduct, Plaintiffs' Motion for Preliminary Injunction should be denied where the merits of Plaintiffs' claim have yet to be addressed by this Court.

In the case entitled *Utah Gospel Mission v. Salt Lake City Corp.*, 316 F.Supp.2d 1201 (D.C. Utah 2004), the plaintiff asserted that its First Amendment free speech rights were violated by the defendant city and church and sought to invalidate the city's sale of a pedestrian easement to the church where demonstrations had been held.  In addressing the plaintiff's motion for preliminary injunction, the court noted that the plaintiff needed to demonstrate that the four preliminary injunction factors weighed heavily and compellingly in their favor, pursuant to the case entitled *SCFC ILC, Inc. v. VISA USA, Inc.*, 936 F.2d 1096, 1098 (10th Cir. 1991).  That court also noted that because a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal.

The *Utah Gospel Mission* case stated that while irreparable harm is often presumed where a violation of First Amendment rights is shown, the plaintiffs in that case had failed to meet their burden of demonstrating that their First Amendment rights were in fact violated. This is also true regarding the Plaintiffs' present lawsuit against the School District Defendants. The *Utah Gospel Mission* court also commented as follows: "Any unnecessary delay in seeking relief 'may be viewed as inconsistent with a claim that plaintiff is suffering great injury or, in the case of preliminary injunctive release, that there is an urgent need for immediate relief, and that a judgment would be rendered ineffective unless some restraint is imposed on defendant, pending an adjudication on the merits." *11A Wright, Miller & Kane, Federal Practice and Procedure*, § 2946 at pp. 113-14 (1995). "Preliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiff's rights. Delay in seeking enforcement of those rights, however, tends to indicate at least reduced need for such drastic speedy action." *Citibank, NA v. Citytrust,* 756 F.2d 273, 276 (2nd Cir. 1985).

In the *Utah Gospel Mission* case, the court noted that although the transaction they objected to closed on June 10, 2003, the plaintiff did not file its complaint until August 7, 2003 and did not file a motion for a preliminary injunction until November 7, 2003, a full three months after its complaint was filed. The court therefore found that the plaintiff's claim of irreparable harm had not been established. This reasoning is applicable to the present case where the Plaintiffs waited nearly two years between their first written objection to alleged SAGE discriminatory treatment until they filed their lawsuit.

12

**IV.**   **The balance of harms do not favor injunctive relief.**

The Plaintiffs contend that the balance of harm weighs in their favor.  In this regard, the Plaintiffs assert that no additional administrative or other costs will be borne by the School District Defendants in according SAGE full curriculum-related group status. Plaintiffs argue that the only burden which the School District Defendants will sustain is that SAGE would be allowed their legal right to disseminate information and have access to school facilities on an equal basis with curriculum-related groups.

However, if the Plaintiffs' Motion is granted, the School District Defendants will be required to provide curriculum-related group status to all noncurriculum-related groups. More importantly, the School District would lose all discretion to distinguish between curricular and noncurricular groups.  The Plaintiffs concede that only the French Club and Math League are curriculum-related groups, and that all other designated groups are noncurriculum-related groups.  If this reasoning is adopted by the Court, then virtually all student groups at MGSH would be accorded curriculum-related group status.

MGSH would also, under the Plaintiffs' interpretation of the E.A.A., lose its ability to afford greater access to minority support groups, such as the Black Achievers, Asian Culture Group and GLBTQ-A, as opposed to noncurriculum-related student groups.

In the *Utah Gospel Mission* decision cited above, the court found that the balance of harms regarding the plaintiff's motion for a preliminary injunction weighed in favor of the defendants, noting that "An injunction would plunge the city back into the significant controversy it experienced."  This reasoning is applicable to the case at hand.  In the absence

13

of a uniformly neutral policy, which the School District presently has in place, the School District will be subject to a veritable minefield of case- by-case decisions as to which organizations may have access and which do not qualify for such access.

The School District has authority to "exercise editorial control over the style and content of student speech in school-sponsored expressive activities, so long as their actions are reasonably related to legitimate pedagogical concerns." *Haselwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 273 (1988).  There may be times when a group will seek to convey a message at school that may impinge upon the separation of church and state doctrine or which may be disruptive to the school environment.  The School District then will be faced with exercising editorial control over the content of the speech, thereby subjecting the School District to potential litigation.  In keeping with the longstanding precedent that educators' decisions with regard to the content of school-sponsored speech should be given substantial deference, the School District's decision as to the degree of access it will allow to student groups should be honored.

**V.      The public interest weighs against Plaintiffs' Motion.**

In support of their claim that the public interest factor weighs in their favor, the Plaintiffs have cited the case entitled *Ben-Yonatan v. Concordia College Corp.*, 863 F.Supp. 983 (D. Minn. 1994).  In that case, a student who had been suspended from college based upon her repeated stalking of former roommates brought a lawsuit alleging breach of contract, as well as a motion for preliminary injunction, claiming that her suspension caused her irreparable harm not compensable by money damages.  The plaintiff also claimed violation of her Fourteenth Amendment rights, asserting that she had been deprived of life, liberty or property without due process of law.  The court found that the plaintiff's procedural due process rights regarding her suspension were outweighed by the college's interest in providing an educational environment that was free from harassment.  The court denied the plaintiff's motion for a preliminary injunction.

The *Ben-Yonatan* decision is clearly distinguishable here.  The Plaintiffs are not alleging that they were subjected to discriminatory or harassing behavior by the School District Defendants in their lawsuit.   The Plaintiffs' claim is limited to their assertion that their E.A.A. rights and federal constitutional rights were violated by the School District's classification of SAGE as noncurriculum group.

It is important to note that the Minnesota Legislature has vested school districts with the general charge of the business of the district and the interests of the schools, including the authority to govern, manage and control the school district.  Minn. Stat. § 123B.02, Subd. 1.  Pursuant to this statute, the legislature accords local school districts the responsibility for

15

administering individual school systems and further authorizes the adoption of reasonable rules and regulations as are necessary and proper for management of school affairs.  As part of the management authority conferred upon them, the school districts in this state have the power to make reasonable rules governing the extracurricular activities of their students.  OP. Att'y Gen. 169q (April 26, 1962).  Thus, the people of Minnesota have vested the School District Defendants with the discretion to develop and apply their own judgment in determining what is best for the School District and its students.

The public interest thus weighs against interfering with action that has been committed by law to the School District's sound discretion.  *Williams v. Austin Ind. Sch. Dist.,* 796 F.Supp. 251, 255 (W.D. Tex. 1992)(in denying a TRO to participate in a graduation system, the court stated that the "public interest is best served by this court not interfering with the decisions of the school district; . . .".)  *State ex rel Ging v. Board of Education*, 213 Minn. 550, 573, 7 N.W.2d 544, 557 (1943)(The great weight of authority constrains an attempt by the court to control the discretion vested in a legally constituted educational board or to substitute its judgment for the judgment of the school board upon a question which is within the sphere of its authority).

In addition, if the injunction were granted, the Plaintiffs would be awarded substantially all of the relief to which they would be entitled to at trial, essentially requiring a "mini-trial" that then would be largely duplicated by the eventual trial on the merits.  This expenditure presents an unnecessary use of both the School District Defendants' and the Court's resources.

## CONCLUSION

The School District Defendants request that this Court deny the Plaintiffs' Motion for a Preliminary Injunction. The Plaintiffs have failed to meet their heavy burden of establishing the four *Dataphase* factors. The Plaintiffs are unlikely to succeed on the merits of the case, as the School District Defendants' actions were not based on the content of the Plaintiffs' speech or any intent to discriminate based on gender-orientation. The Plaintiffs have failed to demonstrate irreparable harm where they have delayed suit for nearly two years after first advising the School District of potential violations of the E.A.A.. The potential of harm to the School District Defendants outweighs the Plaintiffs' harm where the School District Defendants would lose their discretionary ability to distinguish between curriculum-related and noncurriculum-related groups and would face potential future challenges from disgruntled student groups. Finally, the public interest favors denial of the Plaintiffs' Motion where the Minnesota Legislature has vested school districts with the discretion to develop and apply their own judgment in addressing school-related issues.

**KNUTSON, FLYNN & DEANS, P.A.**


Dated: February 7, 2006          By:      */s/ Lawrence J. Hayes, Jr.*
                                       Stephen M. Knutson (159669)
                                       Lawrence J. Hayes, Jr. (42821)
                                       Attorneys for the School Defendants
                                       1155 Centre Pointe Drive, Suite 10
                                       Mendota Heights, MN 55120
                                       Telephone: (651) 222-2811
                                       Fax: (651) 225-0600