UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Straights and Gays for Equality (SAGE);
N.R., by her next friend and parent, S.R.; and
H.W., by her next friend and parent, M.W.,

                    Plaintiffs,

v.                                                    Civ. No. 05-2100 (JNE/FLN)
                                                      ORDER
Osseo Area Schools—District No. 279; Larry
A. McGee, Dean G. Henke, John L. Nelson,
Kim Green, Linda J. Etim, Judith G. Peterzen,
John O'Sullivan, Jr., and Wendy Loberg,
in their individual and official capacities;
Dr. James L. Smith, in his individual capacity; and
Maple Grove Senior High School,

                    Defendants.

---

Michael D. Okerlund, Esq., Thomas C. Kayser, Esq., and David P. Pinto, Esq., Robins, Kaplan, Miller & Ciresi L.L.P., appeared for Plaintiffs Straights and Gays for Equality (SAGE); N.R., by her next friend and parent, S.R.; and H.W., by her next friend and parent, M.W.

Lawrence J. Hayes, Jr., Esq., and Stephen M. Knutson, Esq., Knutson, Flynn & Deans, P.A., appeared for Defendants Osseo Area Schools—District No. 279, Larry A. McGee, Dean G. Henke, John L. Nelson, Kim Green, Linda J. Etim, Judith G. Peterzen, John O'Sullivan, Jr., Wendy Loberg, Dr. James L. Smith, and Maple Grove Senior High School.

---

Straights and Gays for Equality (SAGE), N.R., by her next friend and parent S.R., and

H.W., by her next friend and parent, M.W. (collectively, Plaintiffs), brought this action against

Osseo Area Schools—District No. 279 (School District), Maple Grove Senior High School

(MGSH), and various school board members and school staff (collectively, Defendants).[1]

---

[1]       Plaintiffs brought claims against Larry A. McGee, Dean G. Henke, John L. Nelson, Kim Green, Linda J. Etim, Judith G. Peterzen, John O'Sullivan, Jr., and Dr. James L. Smith. McGee is a Member and Chairperson of the School Board of the School District (School Board); Henke is a Member and Vice Chairperson of the School Board; Nelson is a Member and Clerk of the School Board; Green is a Member and Treasurer of the School Board; Etim is a

Plaintiffs allege claims under 42 U.S.C. § 1983 (2000) for violation of the Equal Access Act (EAA), 20 U.S.C. §§ 4071-4074 (2000); violation of the First Amendment and the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution; and violation of the Equal Protection Clause of the Fourteenth Amendment.  In addition, Plaintiffs bring claims under the Equal Protection Clause of Article I, § 2 of the Minnesota Constitution, and under the Minnesota Human Rights Act (MHRA), Minn. Stat. §§ 363A.01-.41 (2004).  The matter is before the Court on Plaintiffs' motion for a preliminary injunction on the EAA claim and on Defendants' motion for summary judgment on all claims.  For the reasons set forth below, the Court grants Plaintiffs' motion for a preliminary injunction and denies Defendants' motion for summary judgment as premature.

## I.     BACKGROUND

SAGE is an unincorporated association of students enrolled at MGSH.  Its self-described purpose is to "promote tolerance and respect for Maple Grove Senior High students and faculty through education and activities relevant to gay, lesbian, bisexual, and transgender ("GLBT") individuals and their allies."  Plaintiffs N.R. and H.W. are students at MGSH and members of SAGE.  They will graduate from MGSH in spring 2006.

MGSH is a senior high school within the Osseo School District.   The remaining defendants are school board members and current and former staff of MGSH or the School District; each is allegedly responsible in some way for the formation or execution of policies related to designation and treatment of student groups at MGSH.

---

Member and Director of the School Board; Peterzen is a Member and Director of the School Board; O'Sullivan, is the Superintendent of the School District; Loberg is the Principal of MGSH; and Dr. Smith is the former Interim Superintendent of the School District.

MGSH recognizes approximately sixty student teams, groups, clubs, and organizations. Under the Student Group Framework (Framework), student teams, groups, clubs, and organizations are classified as either "curricular" or "non-curricular."  According to the Framework, curricular groups are "[r]elated to the school's curriculum," and are sponsored by the school.  "Non-curricular" groups, on the other hand, are "[n]ot related to the school's curriculum" and are not sponsored by the school.  Among the groups classified by MGSH as "curricular" are Student Government, which includes the Crimson Cabinet, Crimson Council, Diversity Council, Service Council, and Spirit Council; Asian Culture Leadership Group; Black Achievers; Native American Group; Gays, Lesbians, Bisexuals, Transgender, Questioning and Allies (GLBTQ-A); Students Against Destructive Decisions (SADD); National Honor Society; selected sports, including Dance Team, gymnastics, synchronized swimming, and track and field; and cheerleading.  Because they have been denominated "curricular," under the Framework, those Groups are allowed to "communicate via PA, Yearbook, scrolling screen" and "use other avenues of communication."  They are also allowed to participate in "[f]undraising or field trips at principal [sic] discretion."

Of the approximately sixty groups at MGSH, nine have been designated "non-curricular." SAGE is one such group.  As such, under the Framework, SAGE may only announce meetings by placing posters on a community bulletin board and outside its meeting space.  It "[m]ay not announce on PA, in yearbook, scrolling screen, or other avenues of communication" and is prohibited from fundraising or taking field trips.  Plaintiffs maintain that, under the EAA, SAGE is entitled to greater access to MGSH.

## II.   DISCUSSION

### A.   Plaintiffs' motion for preliminary injunction

Plaintiffs seek a preliminary injunction requiring Defendants to grant SAGE the same access for meetings, avenues of communication, and "other miscellaneous rights" afforded to other groups at MGSH.  Injunctive relief may be granted only if the moving party can demonstrate: (1) a likelihood of success on the merits; (2) the movant will suffer irreparable harm absent the injunction; (3) the balance of harms favors the movant; and (4) the public interest favors the movant.  *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981).  Injunctive relief is an extraordinary remedy, *see Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc.*, 815 F.2d 500, 503 (8th Cir. 1987), and the party requesting the injunction bears the "complete burden" of proving they are entitled to such relief.  *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987).   While no one factor is determinative, likelihood of success on the merits is generally the touchstone inquiry.  *Dataphase*, 640 F.2d at 113; *see also S & M Constructors, Inc. v. Foley Co.*, 959 F.2d 97, 98 (8th Cir. 1992).

### 1.   Likelihood of success on the merits

Plaintiffs maintain they are entitled to a preliminary injunction under 42 U.S.C. § 1983. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Because section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred," the first step in analyzing any section 1983 claim is to identify the specific constitutional right or law allegedly infringed.  *See Albright v.*

*Oliver*, 510 U.S. 266, 271 (1994) (quotations and citations omitted).  Here, Plaintiffs allege Defendants are violating the EAA.

The EAA provides:

> It shall be unlawful for any public secondary school which receives Federal financial assistance and which has a limited open forum to deny equal access or a fair opportunity to, or discriminate against, any students who wish to conduct a meeting within that limited open forum on the basis of the religious, political, philosophical, or other content of the speech at such meetings.

20 U.S.C. § 4071(a).  A limited open forum exists "whenever [the] school grants an offering to or opportunity for one or more noncurriculum related student groups to meet on school premises during noninstructional time."  *Id.* § 4071(b).  "Meeting" includes "those activities of student groups which are permitted under a school's limited open forum and are not directly related to the school curriculum."  *Id.* § 4072(3).  Under the EAA, "even if a public secondary school allows only one 'noncurriculum related student group' to meet, the Act's obligations are triggered and the school may not deny other clubs, on the basis of the content of their speech, equal access to meet on school premises during noninstructional time."  *Bd. of Educ. v. Mergens*, 496 U.S. 226, 236 (1990).

The parties do not dispute that MGSH has a limited open forum and that it receives federal financial assistance.  Instead, the parties dispute whether Plaintiffs are being deprived of their right to equal access under the EAA.  Plaintiffs argue that, in addition to meeting space, they are entitled to hang posters throughout the school, announce meetings over the PA system, hand out flyers, and conduct fundraising activities on behalf of SAGE.  According to Plaintiffs, these rights are afforded to groups Defendants have categorized as "curricular," but that are noncurriculum related under the EAA.  In particular, Plaintiffs focus their dispute on Student Government and its various Councils, the Asian Culture Leadership Group, Black Achievers,

Native American Group, GLBTQ-A, SADD, National Honor Society, Dance Team, gymnastics, synchronized swimming, track and field, and cheerleading.

Defendants maintain that they have properly categorized as "curricular" the groups Plaintiffs have identified and therefore that they are not required by the EAA to grant SAGE the same access rights these groups are afforded.  Thus, the parties disagree about whether Defendants are granting other noncurriculum related student groups greater access than they are granting SAGE.  In particular, the parties disagree about whether the groups named above are "noncurriculum related" within the meaning of the EAA.

The EAA does not define "noncurriculum related student group."  In *Mergens*, however, the Supreme Court defined the term "broadly to mean any student group that does not *directly* relate to the body of courses offered by the school."  496 U.S. at 239 (emphasis in original); *see Boyd County High Sch. Gay Straight Alliance v. Bd. of Educ.*, 258 F. Supp. 2d 667, 681 (E.D. Ky. 2003).  The Court further explained:  "[A] student group directly relates to a school's curriculum if the subject matter of the group is actually taught, or will soon be taught, in a regularly offered course; if the subject matter of the group concerns the body of courses as a whole; if participation in the group is required for a particular course; or if participation in the group results in academic credit."  *Mergens*, 496 U.S. at 239-40.

Fundamentally, the parties disagree about how the *Mergens* factors should be applied. Defendants maintain that, even under *Mergens*, school systems retain significant discretion in denominating groups curricular or noncurriculum related.  Plaintiffs, on the other hand, contend that *Mergens* significantly limits a school system's discretion when categorizing student groups as curricular or noncurriculum related.

Under the EAA, school systems retain discretion in crafting school curriculum, maintaining order, and determining whether to maintain a closed or limited open forum in light of their chosen curriculum.[2]  *See Pope v. E. Brunswick Bd. of Educ.*, 12 F.3d 1244, 1248 (3d Cir. 1993).  However, a school system seeking to avoid triggering the obligations under the EAA must carefully apply the *Mergens* criteria.  *See id.* at 1254.  The EAA clearly limits school system discretion.  *See id.*; *see also Boyd County*, 258 F. Supp. 2d at 680 ("While the daily operation of school systems is traditionally reserved to the states and local school boards, by enacting the EAA Congress 'made a matter once left to the discretion of local school officials the subject of comprehensive regulation by federal law.'"); *Colin v. Orange Unified Sch. Dist.*, 83 F. Supp. 2d 1135, 1142 (C.D. Cal. 2000) ("[W]hen courts enforce the [EAA], they remove control from local school boards . . . .").  A school system cannot evade the EAA's requirements by strategically describing existing student groups or by claiming that the group's activities are "remotely related to abstract educational goals."  *See Mergens*, 496 U.S. at 244-45.  Rather, "the curriculum-relatedness of a student activity must be determined by reference to the primary focus of the activity measured against the significant topics taught in the course that assertedly relates to the group."  *Pope*, 12 F.3d at 1253.

With these principles in mind, the Court is persuaded that Plaintiffs are likely to prevail on their claim that at least one of the groups listed above is noncurriculum related.  Specifically, Plaintiffs are likely to prevail in their argument that cheerleading and synchronized swimming are noncurriculum related.  MGSH Principal Wendy Loberg testified at her deposition that cheerleading is an after-school activity, there is no cheerleading class taught at MGSH, and the subject matter of the group does not concern any body of courses as a whole.  Loberg similarly

---

[2]     School boards may also exercise their discretion to forego federal funds to avoid application of the EAA.  *See Mergens*, 496 U.S. at 241.

testified that synchronized swimming is not taught in any MGSH class, and, in fact, MGSH does not have a pool.  Although Defendants have offered evidence that swimming is among the possible activities physical education teachers may teach, they have not offered any admissible evidence that swimming is actually taught or soon to be taught at MGSH.  Moreover, even if Defendants had come forward with such evidence, the Court is not persuaded that this showing would satisfy *Mergens*.  *See Mergens*, 496 U.S. at 245 (holding scuba diving club was noncurriculum related notwithstanding the fact the school's physical education classes included swimming).  In light of Principal Loberg's concessions, and because there is no dispute that neither cheerleading nor synchronized swimming is required or available for course credit, the Court concludes that Plaintiffs are likely to prevail on their assertion that these groups are noncurriculum related.

To prevail on their EAA claim, Plaintiffs need only demonstrate that one of the identified student groups is noncurriculum related under *Mergens* and that the group is afforded greater rights than SAGE.  *See Boyd County*, 258 F. Supp. 2d at 683 ("Once a court determines, using the factors outlined above, that even one 'noncurriculum-related student group' has been permitted to meet, a limited open forum has been created and the EAA's obligations are triggered."); *Colin*, 83 F. Supp. 2d at 1147 ("To the extent that the Board opens up its school facilities to *any* noncurriculum related group, it must uniformly open its facilities to *all* student groups.").  For the reasons stated above, Plaintiffs have satisfied this burden.  At this stage of the litigation, the Court is persuaded that both cheerleading and synchronized swimming are noncurriculum related student groups; because MGSH has categorized the groups as "curricular"

8

under the Framework, both are afforded greater access to the school than SAGE.[3]   Accordingly, the Court concludes that Plaintiffs are likely to succeed on the merits of their EAA claim.  This factor weighs in favor of granting preliminary injunctive relief.

2.      *Irreparable harm*

Having concluded Plaintiffs have met their burden of establishing a likelihood of success on the merits, the Court turns to the remaining *Dataphase* factors, beginning with irreparable harm.  "[T]o warrant a preliminary injunction, the moving party must demonstrate a sufficient threat of irreparable harm."  *Bandag, Inc. v. Jack's Tire & Oil, Inc.*, 190 F.3d 924, 926 (8th Cir. 1999).  A preliminary injunction should not be granted when any harm which the moving party will suffer between the time of the preliminary injunction and the trial can be adequately compensated by money damages and a permanent injunction.  *Id*.

By bringing this lawsuit, Plaintiffs seek to vindicate their rights to meet at MGSH, to publicize their group, and to hold fundraisers on an equal basis with other noncurriculum related student groups.  Plaintiffs argue that money damages are not adequate to compensate them for the deprivation of these rights.  Plaintiffs further argue that because the two individual plaintiffs in this matter, H.W. and N.R., are both seniors at MGSH and are on track to graduate from MGSH in less than six months, they will likely not be able to exercise their rights under the EAA absent a preliminary injunction.  The Court agrees.  Although Defendants suggest that any harm can be cured by Defendants reclassifying the misclassified groups as "noncurricular" and restricting their rights accordingly, Plaintiffs have succeeded in demonstrating that MGSH is likely currently violating Plaintiffs' rights.  Having made this showing, Plaintiffs are entitled to a

---

[3]      In view of the Court's conclusions that cheerleading and synchronized swimming are noncurriculum related groups, the Court need not determine whether the remaining groups Plaintiffs have identified are noncurriculum related under *Mergens*.

presumption of irreparable harm.  *See, e.g.*, *Hsu v. Roslyn Union Free Sch. Dist. No.* 3, 85 F.3d 839, 872 (2d Cir. 1996) (holding that loss of expressive liberties protected by EAA constitutes irreparable harm); *Colin*, 83 F. Supp. 2d at 1149 (holding that a "presumption of irreparable harm arises in the case of violations of the [EAA] because it protects 'expressive liberties'").

Defendants argue that any presumption of irreparable harm is rebutted by the fact Plaintiffs waited two years to file suit.  Although Plaintiffs did not file suit immediately, they took active steps to resolve this matter without resort to litigation during the two years preceding the filing of this lawsuit.  The Court concludes that the presumption of irreparable harm has not been rebutted.  Plaintiffs are suffering, and will continue to suffer, irreparable harm if the injunction is not granted.  This factor weighs in favor of granting Plaintiffs' motion.

3.      *Balance of harms*

Next, the Court considers whether the balance of harms favors granting injunctive relief. In this case, the demands placed on Defendants by grant of a preliminary injunction will be minimal.  Plaintiffs "seek no onerous privileges or rights, but merely access to school facilities such as hallway walls and the announcement system equal to that of" the groups MGSH has improperly labeled "curricular."   In addition, they ask to be allowed to conduct fundraising activities, as the currently denominated "curricular" groups are allowed to do.  On the other hand, if the Court were to deny Plaintiffs' motion, Plaintiffs' expressive rights would be burdened.  *See Colin*, 83 F. Supp. 2d at 1150 (holding  that burden on expressive rights is a significant burden).  This factor therefore weighs in favor of granting Plaintiffs' motion.

4.      *Public interest*

Finally, the Court concludes that the public interest will be served by enforcing Plaintiffs' rights under the EAA.  "Just as constitutional violations—and by extension [EAA] violations—

constitute irreparable harm, the exoneration of any such violations would serve to satisfy the public interest requirement." *Boyd County*, 258 F. Supp. 2d at 692.  This factor therefore weighs in favor of granting injunctive relief.

In sum, after weighing all of the factors discussed above, the Court concludes that Plaintiffs are entitled to a preliminary injunction.

## B.      Defendants' motion for summary judgment

Defendants assert they are entitled to summary judgment on all of Plaintiffs' claims.  The parties are currently conducting discovery and Plaintiffs have submitted a Rule 56(f) affidavit attesting to the fact that key depositions and interrogatory and production requests remain outstanding.   Under these circumstances, the Court denies Defendants' motion for summary judgment as premature.  *See* Fed. R. Civ. P. 56(f); *Iverson v. Johnson Gas Appliance Co.*, 172 F.3d 524, 530 (8th Cir. 1999) (stating general rule that summary judgment is proper only after nonmovant has had adequate time for discovery).

### III.    CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT

IS ORDERED THAT:

1.    Plaintiffs' motion for a preliminary injunction [Docket No. 14] is GRANTED.

2.    Defendants' motion for summary judgment [Docket No. 22] is DENIED AS PREMATURE.

3.    MGSH, its officers, agents, servants, employees, attorneys, and those persons in active concert or participation with MGSH who receive actual notice of this order by personal service or otherwise shall grant SAGE the same access for meetings, avenues of communication, and other miscellaneous rights afforded to MGSH "curricular" groups.  Among the rights SAGE shall be granted are the rights to communicate to the student body via the public announcement system, the yearbook, and the school's scrolling screen; to engage in fundraising activities at the principal's discretion; and to distribute flyers.

4.    This injunction shall remain in effect until further Order of the Court.

5.    Because there is little, if any, risk of monetary loss to MGSH by granting the injunction, and Plaintiffs have shown a strong likelihood of success on their EAA claim, the Court waives the security requirement set forth in Federal Rule of Civil Procedure 65(c).

Dated:  April 4, 2006

s/  Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge