UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Straights and Gays for Equality (SAGE);
N.R., by her next friend and parent, S.R.; and
H.W., by her next friend and parent, M.W.,

        Plaintiffs,

v.                                                                                                   Civ. No. 05-2100 (JNE/FLN)
                                                                                                     ORDER
Osseo Area Schools—District No. 279; Larry
A. McGee, Dean G. Henke, John L. Nelson,
Kim Green, Linda J. Etim, Judith G. Peterzen,
John O'Sullivan, Jr., and Wendy Loberg,
in their individual and official capacities;
Dr. James L. Smith, in his individual capacity; and
Maple Grove Senior High School,

        Defendants.

---

Thomas C. Kayser, Esq., David P. Pinto, Esq., and Genevieve M. Zimmerman, Esq., Robins, Kaplan, Miller & Ciresi L.L.P., appeared for Plaintiffs Straights and Gays for Equality (SAGE); N.R., by her next friend and parent, S.R.; and H.W., by her next friend and parent, M.W.

Lawrence J. Hayes, Jr., Esq., and Stephen M. Knutson, Esq., Knutson, Flynn & Deans, P.A., appeared for Defendants Osseo Area Schools—District No. 279, Larry A. McGee, Dean G. Henke, John L. Nelson, Kim Green, Linda J. Etim, Judith G. Peterzen, John O'Sullivan, Jr., Wendy Loberg, Dr. James L. Smith, and Maple Grove Senior High School.

---

A student group, Straights and Gays for Equality (SAGE), and two of its members, N.R. and H.W., brought this action against a school district, Osseo Area Schools—District No. 279 (District); a senior high school, Maple Grove Senior High School (MGSH); and various school board members and school staff to redress alleged statutory and constitutional violations arising out of SAGE's inability to gain access to school facilities on the same terms as other student groups. In April 2006, the Court granted Plaintiffs' Motion for a Preliminary Injunction. Defendants appealed, and the United States Court of Appeals for the Eighth Circuit affirmed.

*Straights & Gays for Equal. (SAGE) v. Osseo Area Sch.—Dist. No. 279*, 471 F.3d 908 (8th Cir. 2006). Seeking to make the preliminary injunction permanent, SAGE now moves for partial summary judgment.[1] For the reasons set forth below, the Court grants the motion.

## I.     BACKGROUND

MGSH is a senior high school in the District. There are more than sixty student groups at MGSH. Pursuant to the District's Student Group Framework (Framework), the groups are classified as either curricular or noncurricular. The Framework defines curricular student groups as "[r]elated to the school's curriculum" and allows them to "meet before school, during instructional time, or after school at the discretion of the principal." It allows curricular student groups to "communicate via PA [public address system], Yearbook, [or] scrolling screen" and to "use other avenues of communication." The Framework also provides that school funds may be expended on curricular student groups and that the groups may engage in fundraising or field trips at the discretion of the school's principal.

The Framework defines noncurricular student groups as "[n]ot related to the school's curriculum." Under the Framework, their access for meetings is "[l]imited." Noncurricular student groups "[m]ay meet before or after [the] regular school day (not during school day)," and they "[m]ay not interfere with district or school operation." To announce a meeting, noncurricular student groups may place a poster on a community bulletin board and a poster outside the meeting space. They may not use the school's public address system, yearbook, scrolling screen, or other avenues of communication to make announcements. Noncurricular student groups may not engage in fundraising or field trips, and school funds cannot be expended on them.

---

[1]     N.R. and H.W. graduated from MGSH in spring 2006.

SAGE is an unincorporated association of students at MGSH. According to the affidavit of N.R., "[i]ts purpose is to promote tolerance and respect for [MGSH] students and faculty through education and activities relevant to gay, lesbian, bisexual and transgender . . . individuals and their allies." SAGE is one of approximately ten student groups at MGSH classified as noncurricular. SAGE contends that its inability to take advantage of school facilities on the same terms as other student groups constitutes a violation of the Equal Access Act, 20 U.S.C. § 4071 (2000), and the First Amendment. SAGE now moves for summary judgment on those claims.

## II.   DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the nonmoving party to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The Equal Access Act prohibits any public secondary school that receives federal financial assistance and that has a limited open forum from "deny[ing] equal access or a fair opportunity to, or discriminat[ing] against, any students who wish to conduct a meeting within

that limited open forum on the basis of the religious, political, philosophical, or other content of the speech at such meetings." 20 U.S.C. § 4071(a). "A public secondary school has a limited open forum whenever such school grants an offering to or opportunity for one or more noncurriculum related student groups to meet on school premises during noninstructional time." *Id.* § 4071(b). "[E]ven if a public secondary school allows only one 'noncurriculum related student group' to meet, the Act's obligations are triggered and the school may not deny other clubs, on the basis of the content of their speech, equal access to meet on school premises during noninstructional time." *Bd. of Educ. v. Mergens*, 496 U.S. 226, 239 (1990); *see Straights & Gays for Equal.*, 471 F.3d at 911.

In *Mergens*, the Supreme Court defined "noncurriculum related student group" as "any student group that does not *directly* relate to the body of courses offered by the school." 496 U.S. at 239; *see Straights & Gays for Equal.*, 471 F.3d at 911. The Supreme Court narrowly defined "curriculum related student group" as a group that directly relates to a school's curriculum:

> In our view, a student group directly relates to a school's curriculum if the subject matter of the group is actually taught, or will soon be taught, in a regularly offered course; if the subject matter of the group concerns the body of courses as a whole; if participation in the group is required for a particular course; or if participation in the group results in academic credit. We think this limited definition of groups that directly relate to the curriculum is a commonsense interpretation of the Act that is consistent with Congress' intent to provide a low threshold for triggering the Act's requirements.

*Mergens*, 496 U.S. at 239-40; *see Straights & Gays for Equal.*, 471 F.3d at 911. "The circle of groups considered 'curriculum related' has a relatively small circumference and does not include 'anything remotely related to abstract educational goals.'" *Straights & Gays for Equal.*, 471 F.3d at 911 (quoting *Mergens*, 496 U.S. at 244). The inquiry, then, is whether a curricular group

4

is solidly connected to an element of the actual (or imminent) curriculum, rather than whether the group is in harmony with broad educational goals.

MGSH is a public secondary school, it receives federal financial assistance, and it has a limited open forum. It is undisputed that the Equal Access Act applies to MGSH. SAGE contends that several MGSH student groups classified as curricular are actually noncurriculum related student groups. The groups identified by SAGE include: Synchronized Swimming; Cheerleading; Spirit Council; and Black Achievers. By denying SAGE the same access to school facilities afforded to other noncurriculum related student groups, MGSH allegedly violated the Equal Access Act. The District bears the burden of showing that the student groups identified by SAGE directly relate to MGSH's curriculum. *See Mergens*, 496 U.S. at 40; *Pope v. E. Brunswick Bd. of Educ.*, 12 F.3d 1244, 1252 (3d Cir. 1993).

With regard to Synchronized Swimming and Cheerleading, the District contends that they are not "student groups" within the meaning of the Equal Access Act. It cites no authority for the proposition, but contends that the Act does not apply to a student group that does not engage in expressive conduct or speech. It further contends that participation in sports or athletics is not speech. Consequently, the District concludes, neither Synchronized Swimming nor Cheerleading is a "student group" within the meaning of the Act. The Court rejects the District's argument. The argument conflicts with the Supreme Court's broad interpretation of the Act. *See Mergens*, 496 U.S. at 239. It also disregards the Supreme Court's application of the Act to student groups whose activities, according to the District's argument, would not constitute speech. *See id.* at 245-46 (concluding that clubs related to chess and scuba diving were noncurriculum related student groups). Cheerleading is classic First Amendment speech—the

5

use of verbal and physical forms of communication to create team spirit.[2] *See Straights & Gays for Equal.*, 471 F.3d at 911.

The District next argues that Synchronized Swimming and Cheerleading directly relate to MGSH's curriculum because participation in the groups results in academic credit. In support, the District states that all students must complete the Life Fitness course to graduate. The course requires students to implement a physical fitness plan and to document progress through daily log entries. Because students have used their participation in Cheerleading and Synchronized Swimming to implement their physical fitness plan, the District contends that participation in the groups results in academic credit. Consequently, the District argues, Cheerleading and Synchronized Swimming directly relate to MGSH's curriculum.

SAGE contends that the District is precluded from arguing that participation in Cheerleading and Synchronized Swimming results in academic credit because this Court, in granting the preliminary injunction, and the Eighth Circuit, in affirming the grant of the preliminary injunction, stated that participation in the groups does not result in academic credit. The Court rejects SAGE's argument. *See United States Sec. & Exch. Comm'n v. Zahareas*, 272 F.3d 1102, 1105 (8th Cir. 2001); *Patterson v. Masem*, 774 F.2d 251, 254 (8th Cir. 1985).

SAGE next argues that the connection between academic credit and participation in Cheerleading and Synchronized Swimming is too attenuated. *See Mergens*, 496 U.S. at 238 ("The logic of the Act also supports this view, namely, that a curriculum-related student group is one that has more than just a tangential or attenuated relationship to courses offered by the school."). The Court agrees. It is undisputed that students may engage in activities during class or outside of the school day to implement their physical fitness plans. Any activity that improves

---

[2]   The Court notes that the Framework grants Cheerleading and Synchronized Swimming access to various means of communication at MGSH.

or maintains a student's fitness level is permissible. Accordingly, students have used walks with mom, walks in a mall, walks home, walks with a dog, hackeysack, pond hockey, and snow shoveling to implement their physical fitness plans. Acceptance of the District's argument would lead to the absurd result that student groups devoted to any of these activities be deemed curriculum related student groups.[3] The Court recognizes that a school can legitimately classify activities such as cheerleading and synchronized swimming "as 'curriculum related' by granting physical education academic credit to students who participate in such groups." *Straights & Gays for Equal.*, 471 F.3d at 913. In this case, the District has not done so.[4] The relationship between academic credit and participation in Cheerleading and Synchronized Swimming to satisfy part of a physical fitness plan that is required for the Life Fitness course is too attenuated to satisfy the "results in academic credit" test of *Mergens. See* 496 U.S. at 239. The Court therefore concludes that the District has not satisfied its burden to demonstrate that Cheerleading and Synchronized Swimming directly relate to MGSH's curriculum.[5]

---

[3]      The Court notes that the District has not consistently applied the criteria advanced here. The record reveals that students have used various forms of dance to implement their physical fitness plans. One student group, Cliché, is a hip hop dance troupe. Participation in it could be used to satisfy a student's physical fitness plan. Nevertheless, the District classified Cliché as noncurricular under the Framework. Without directing the Court to any evidence, the District asserted at the motion hearing that the point is moot because Cliché no longer exists. In any case, the District asserted that the classifications of Cliché as noncurricular and of traditional high school sports teams as curricular are permissible because the District (and high school leagues) sanction traditional sports teams. The District's argument is circular—the District deems certain student groups curricular because it sanctions them, but the District decides which groups to sanction. This type of decision making is exactly what the Equal Access Act is meant to prohibit. *See Mergens*, 496 U.S. at 244-45.

[4]      In its opposition memorandum, the District states: "The School District does not contend that participation on an athletic team alone may result in full academic credit."

[5]      At the motion hearing, the District also argued that Cheerleading and Synchronized Swimming directly relate to MGSH's curriculum because participation in the groups is required for a particular course, namely, Life Fitness. This argument has no merit. First, in its opposition

The Court turns next to the Spirit Council. The Spirit Council is part of MGSH's student government. "A school's student government would generally relate directly to the curriculum to the extent that it addresses concerns, solicits opinions, and formulates proposals pertaining to the body of courses offered by the school." *Mergens*, 496 U.S. at 240; *see Straights & Gays for Equal.*, 471 F.3d at 911 ("[A] student government organization is directly related to the curriculum if it addresses matters relating to the body of courses offered by the school."). The Spirit Council is responsible for planning activities such as Homecoming, Snow Daze, Spring Fling and other events that foster a sense of positive school spirit and pride. The subject matter of the Spirit Council does not concern MGSH's body of courses as a whole. No course requires participation in the Spirit Council, and participation does not result in academic credit. The District argues generally that the subject matter of MGSH's student government is taught in the school's Political Science course. According to the affidavit of Vicky Swedenburg, a Curriculum Specialist in the District, topics addressed in Political Science include "the Constitution, Federalism, Separation of Powers and Checks and Balances, Political Parties and Interest Groups, Elections, Citizenship and Voting, Issues of Political Efficacy . . . the Executive Branch, the Legislative Branch . . . and State and Local Government." Planning school dances and events is not taught in Political Science; there is no evidence that the subject matter of the

---

memorandum, the District expressly disclaims the argument: "[T]he School District does not contend that participation on an athletic team [Cheerleading and Synchronized Swimming] is required for any particular course at MGSH." Second, Wendy Loberg, MGSH's principal, testified that no course at MGSH requires participation in Cheerleading and Synchronized Swimming. Indeed, MGSH does not have a pool. As already noted, Life Fitness permits a student to engage in any activity that improves or maintains a student's fitness level to implement the physical fitness plan. District-sponsored team activities are not given special consideration toward the Life Fitness plan.

8

Spirit Council is actually taught or will soon be taught in a regularly offered course at MGSH.[6] Accordingly, the Court concludes that the District has not satisfied its burden of establishing that the Spirit Council directly relates to MGSH's curriculum.

Finally, the Court considers Black Achievers. Black Achievers is a student group that provides support to African American students with integration into MGSH and leadership skills training. The District contends that the group directly relates to MGSH's curriculum because the group's subject matter is taught in two courses, Foundations and Positive Leadership. According to Loberg's affidavit, topics addressed in Foundations include "how to be successful in school, team building/integration activities and leadership." Positive Leadership "is designed to enable students to develop an awareness of their own leadership potential." Topics addressed include "planning and organizing, communications skills and techniques, positive relationship building, problem solving and decision making." Thus, neither Foundations nor Positive Leadership actually teaches integration and leadership skills with respect to African American students.[7] *Cf. Mergens*, 496 U.S. at 244-45 (rejecting contention that "curriculum related" means "anything remotely related to abstract educational goals" and concluding that student group devoted to scuba diving was noncurriculum related notwithstanding physical education classes that taught

---

[6] The Court notes that the one-to-one relationship demanded by the District between the subject matter of SAGE and MGSH's curriculum—the District asserted at the motion hearing that SAGE has "provided no materials to the Court that say that there's a subject taught at Maple Grove that actually encourages acceptance of gays"—is not demanded of other groups such as the Spirit Council.

[7] Again, the Court notes that the one-to-one relationship between SAGE and MGSH's curriculum demanded by the District—the District states in its opposition memorandum that SAGE has not "shown that the subject matter of 'tolerance and respect' relevant to [gay, lesbian, bisexual, transgender, and questioning] individuals is actually taught in any course"—is not required of other student groups such as Black Achievers.

9

swimming). Accordingly, the Court concludes that the District has not satisfied its burden of demonstrating that the Black Achievers directly relates to MGSH's curriculum.

A plaintiff seeking a permanent injunction "must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 126 S. Ct. 1837, 1839 (2006); *see Forest Park II v. Hadley*, 336 F.3d 724, 731 (8th Cir. 2003). Here, the record, viewed in the light most favorable to the District, reveals that several student groups at MGSH deemed "curricular" under the Framework are actually noncurriculum related student groups. By denying SAGE equal access to the same avenues of communication afforded other noncurriculum related student groups, the District violates the Equal Access Act. *See Straights & Gays for Equal.*, 471 F.3d at 912. This violation irreparably harms SAGE, and remedies at law are inadequate to compensate for that injury. *See id.* at 913. Against this harm, the Court balances the hardship imposed on the District by an injunction. The demands placed on the District by an injunction are slight. SAGE seeks only the same access to school facilities accorded other student groups improperly labeled "curricular." The balance of harms favors SAGE. The Court recognizes that "public school administrators must be given a great deal of autonomy in deciding how best to run their schools: '[T]he education of the Nation's youth is primarily the responsibility of parents, teachers, and state and local school officials, and not of federal judges.'" *Hsu v. Roslyn Union Free Sch. Dist. No. 3*, 85 F.3d 839, 872 (2d Cir. 1996) (quoting *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 273 (1988)). Nevertheless, "the Equal Access Act is a definite, though measured, interference in these purely local decisions."

*Id.* Enforcement of the Act serves the public interest. Accordingly, the Court grants SAGE a permanent injunction that accords SAGE the same access for meetings, avenues of communication, and other miscellaneous rights afforded to MGSH's "curricular" groups.[8]

### III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. SAGE's Motion for Partial Summary Judgment [Docket No. 203] is GRANTED.

2. The District, its officers, agents, servants, employees, attorneys, and those persons in active concert or participation with the District who receive actual notice of this order by personal service or otherwise shall grant SAGE the same access for meetings, avenues of communication, and other miscellaneous rights afforded to MGSH "curricular" groups.

3. This injunction supersedes the preliminary injunction [Docket No. 82].

Dated: September 25, 2007

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge

---

[8] Having granted SAGE a permanent injunction pursuant to the Equal Access Act, the Court declines to consider whether the First Amendment compels the same result. *See Mergens*, 496 U.S. at 247; *New York City Transit Auth. v. Beazer*, 440 U.S. 568, 582 (1979); *Prince v. Jacoby*, 303 F.3d 1074, 1090 (9th Cir. 2002).